## CLARKE et al. v. FREEBAIRN.

No. 4987.   Decided August 16, 1932.   (13 P. [2d] 327.)

*Geo. P. Parker* and *E. D. Sorenson,* both of Salt Lake City, for appellant.

*A. L. Booth,* of Provo, for respondents.

CHERRY, C. J.

The plaintiffs had a judgment for interest and taxes found by the court to be due from the defendant upon a written contract for the sale by plaintiffs to defendant of a tract of land in Utah county, from which judgment defendant has appealed.

On May 2, 1927, the parties entered into a written agreement whereby the plaintiffs agreed to sell and the defendant agreed to buy 400 acres of farming land and certain described personal property for the total sum of $13,000, with interest on deferred payments after January 1, 1928, at 6 per cent per annum.   The controversy involves only

the interpretation of the contract regarding the payment of the purchase price. The contract contains much matter not in question, and need not be quoted in full. The present case may be stated by reference to those provisions relevant to the point in dispute. With reference to the payment of the purchase price, the interest thereon, and the taxes on the property, the contract provides:

"2. The purchasers do hereby covenant, promise and agree to and with the vendors that they shall and will well and truly pay or cause to be paid to the vendors, the sum of $13,000.00, with interest as aforesaid, in the manner hereinafter set out, viz:

"3. It is mutually understood and agreed there is at the present time approximately 320 acres of ground out of the 400 acres under cultivation, approximately one-half of the cultivated portion being planted to wheat, and the other one-half in summer fallow. There being approximately 55 acres of the summer fallow not plowed.

"The purchasers agree that they will deliver to the vendors one-third of the gross amount harvested in the fall of 1927, at the Peoples' Mill and Elevator Company's Mill, or other place not more remote from the farm, as may be agreed upon, free of all cost to the vendors.

"4. The purchasers shall plant to crop approximately one-half the land which is now under cultivation, or which may hereafter be brought under cultivation each year, and shall summer fallow the other half each year, and shall farm said land in a thorough and husband-like manner, and shall deliver to the vendors so soon as threshed one-third of all the crops of any kind or description which may be sown, grown and harvested on the said lands in each and every year until the whole amount of purchase money and interest is fully paid and satisfied, the vendors agreeing to accept their share of the said crops at the current market prices at the Peoples' Mill and Elevator, or such other place as may be agreed upon at which the said grain shall be delivered, and the purchasers agreeing to deliver such grain free of charge at the above said mill or such other place as may be agreed upon within thirty days after the said shall be threshed.

"The said grain shall be deemed, as soon as harvested, to belong to the vendors until such time as the yearly terms of this contract are complied with, and the purchasers in threshing and delivering the said grain shall be deemed to be acting as to the one third of the same as the vendors' agent without remuneration. The grain so delivered to the vendors at the elevator or the proceeds thereof shall be applied by him toward the payment of any interest or taxes after

Jan. 1st, 1928, then in arrears and then in reducation of the principal money hereunder.

"The purchasers further covenant that as to the interest above provided for, they will pay the same in yearly payments to the vendors the first day of November of each and every year, beginning with the year 1928, until the whole of the price and interest herein is paid and satisfied and the purchasers further covenant that they will pay interest at the rate of 6 per cent per annum on all arrears of interest, which amounts of interest when due shall be added to the principal.

"The purchasers shall go into possession upon the day of the date hereof and shall be entitled to retain possession so long as they observe and perform all the covenants and agreements herein entered into strictly and in the maner herein set out. The purchasers will pay all taxes, rates and assessments of every kind and nature that may be levied or placed against said lands or any part thereof, and will also keep up all fences or other improvements upon the said lands and will keep down all weeds now or hereafter grown upon the same, and will cultivate said lands in a thorough and husband-like manner.

"5. In consideration of the foregoing covenants on the part of the purchasers and on the payment to the vendors of the said sums of principal and interest strictly in the manner and at the times fixed and the performances of the conditions aforesaid the vendors agree with the purchaserss to immediately thereupon convey to them by transfer, and by proper deed all the said lands, free from encumbrances, other than such as had been placed thereon by the purchasers. * * *

"8. The purchasers further covenant and agree that if they shall make default in payment of any of the sums of money or delivery of crop herein agreed to be paid at any of the times hereinbefore limited for the payment or delivery thereof, the vendor may distrain therefor upon said land or any part thereof any goods thereon for said sums or the value of said share of crop with interest and charges. * * *

"11. If the purchasers fail to make the payments aforesaid or any of them within the time above limited respectively or fail to carry out in their entirety the conditions of this agreement in the manner and whin the times above mentioned, the time of payment as aforesaid being of the essence of this agreement, then the vendors may mail by registered letter to the purchasers a notice in writing signed by the vendors or their agents or attorney and inclose in an envelope postpaid and addressed to the purchasers at or delivered to the purchasers personally to the effect that unless such payment or payments so in arrears is or are paid or such conditions are complied with within

thirty days from the mailing thereof, this agreement shall be determined and if after mailing such notice if the purchasers continue such default for the space of 30 days thereafter all rights and interest of the purchasers under this agreement shall forthwith cease and determine and the said lands shall revert to, and revert in the vendors without any further declaration of forfeiture or notice and the purchasers shall immediately vacate and deliver up possession of said lands and premises to the vendors and all money paid thereunder prior to said breach may be retained by the vendors as occupation rent of said lands."

The trial court interpreted the contract to mean that the purchaser agreed to deliver one-third of the annual crop produced on the land, and in addition thereto to pay, in money, the interest on the unpaid portion of the purchase price and the taxes assessed upon the property. The contention of the defendant, both in the trial court and here, is that the contract bound the purchaser merely to deliver one-third of the annual crops produced on the land, with no further or other payments in money.

We are of the opinion that the conclusion of the trial court must be sustained. Detached portions of the agreement, standing alone, lend some support to the defendant's claim, but the whole contract relating to the payment of the purchase price, interest, and taxes, we think confirms the view that the purchaser undertook to deliver one-third of the annual crop, and, in addition thereto, to pay the interest on the unpaid portion of the purchase price, and the taxes assessed against the property. The stipulation that "the grain so delivered to the vendor at the elevator or the proceeds thereof shall be applied by him toward the payment of any interest or taxes after January 1st, 1928, then in arrears and then in reduction of the principal money hereunder," rather supports the defendant's contention, but the provision is outweighed and overcome by numerous other covenants and references to the matter in question. The language of the undertaking to pay interest is that "the purchasers further covenant that as to the interest above pro-

vided for, they will pay the same in yearly payments to the vendors the first day of November of each and every year, beginning with the year 1928." This plainly is an agreement to pay the interest annually in money, in addition to the delivery of one-third the crop, because it is denominated a "further covenant," and the interest is payable at a date each year different from the time at which the delivery of one-third the crop is required. Further reference to the matter is the provision "that if they shall make default in payment of any of the sums of money or delivery of crop herein agreed to be paid at any of the times hereinbefore limited for the payment or delivery thereof, the vendor may distrain therefor," etc., and the allusion in the forfeiture clause to the failure "to make the payments aforesaid or any of them within the time above limited respectively," etc. The covenant to pay taxes is in form unconditional and independent of other requirements.

Upon the claim of the defendant that the contract was ambiguous, the court heard oral evidence of the negotiations of the parties which preceded the execution of the written agreement. The evidence was conflicting; each side producing extrinsic testimony favoring his theory of the transaction. The trial court, of course, was the judge of the credibility of such witnesses and the weight of such evidence, and was at liberty to believe or reject any of it. No findings were made upon the oral evidence, but, since the interpretation was in accordance with the plaintiffs' contention, we presume in aid of the judgment, that the trial court gave credence to the plaintiffs' extrinsic evidence which strongly supported the conclusion reached. No complaint is made by defendant of the failure of the court to make findings of fact upon the oral evidence produced.

We find no sufficient grounds for disturbing the decision of the trial court. The judgment is affirmed.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.